## MUNICIPAL CORPORATIONS—RIVERS—CONTRACTS.

[Cuyahoga Circuit Court.]

*JAMES R. SPRANKLE v. CLEVELAND (CITY) ET AL.

1. ACT 90 O. L. 34—EFFECT ON SEC. 2702, REV. STAT.
   The act of February 9, 1893, 90 O. L. 34, amending the act of March 18, 1889, 86 O. L. 109, authorizing cities of the first class, second grade, to contract for dredging navigable streams within their limits, for not exceeding five years, and providing that "the amount to be expended for dredging shall not

* Affirmed by the Supreme Court, 56 Ohio St. 759, unreported.

*Miner G. Norton* and *Phillips, Ford & Crowel*, for defendants in error, in the Supreme Court, cited:

Public improvements: Dibble v. New Haven, 56 Conn. 199.

Injunction: 3 Wait Act. & Def.; 2 High Injc. 1106, 1107; 20 Conn. 532, 538; 5 N. J. Eq. 203, 221; 82 Pa. St. 373; 44 N. H. 79, 92.

exceed the current revenues for such purposes in each year" operates, in respect to such contract, and in such cities, to remove, or is in substitution for, the limitation upon power to contract of Sec. 2702, Rev. Stat., as to certificates that money is in the treasury and unappropriated.

2. CONTRACT UNDER 90 O. L. 34, DOES NOT PREVENT CONTRACT UNDER SEC. 1692.

It was not intended by the act of February 9, 1893, 90 O. L. 34, authorizing cities of the first class, second grade, to make dredging contracts, the amount to be expended not to exceed current yearly revenue therefor, to authorize cities to enter into contracts for the improvement of rivers which might require the expenditure of a large sum of money to be raised only by incurring debts. Therefore, the right to make such contracts under Sec. 1692, paragraph 19, Rev. Stat., the general power to improve rivers, etc., cannot be defeated by a contract under the act first referred to. One does not impinge upon or defeat the right to make the other.

APPEAL.

HALE, J.

In the case of Sprankle against the city of Cleveland we have reached a conclusion, which I will briefly announce.

It is safe to say that for some years, perhaps three or four, the city government of the city of Cleveland had under consideration the desirability of improving the Cuyahoga river, to better accommodate shippers and those engaged in the carrying trade of the lakes, at the port of Cleveland.

The consideration of this subject reached a definite plan, for the improvement of the river; that plan has received the sanction of all the departments of the city government who were authorized or required to take part in the proceedings, authorizing the improvements. So that the improvement contemplated has been legally authorized or at least no suggestion is made of any infirmity in the proceedings leading to the adoption of the plan and the impovement.

The proceedings have reached a point where it becomes necessary to provide the necessary practical means of carrying out and perfecting the doing of the work incident to this improvement, as authorized by the statute. The city, through its proper officers, or officer, has advertised for proposals for doing this work. Bids have been received, opened and considered, and it is alleged that the city, through its proper authorities, is about to enter into a contract for the doing of this work, with the lowest and best bidder who, in answer to a notice, put in proposals for doing the work. At this point, objection is made, and injunction sought against the city, to prevent the completion of the contract contemplated.

First, a suit was brought by Mr. Rooney, claiming that he held a contract with the city, made in April, 1895, under and by virtue of which he had the right to do this work now proposed to be given to another; that the city was under obligations to permit him to do the work, and to pay to him the stipulated price named in his contract for the work. That case was heard, and after as careful consideration as we were able to give it decided that he had no claim authorizing the court to enjoin the city at his suit. We supposed that if wrong in that holding, that an effort would be made to review that case in the Supreme Court and set us right, as we are always very anxious to be set right, when wrong. But that has not yet been done.

Sprankle v. Cleveland.

A citizen of the city, and a taxpayer, instituted another suit in the court of common pleas, the object being precisely the same as that sought to be accomplished by Mr. Rooney, to-wit, to enjoin the city from entering into this contract which is now proposed to be made.

It is true the plaintiffs in the two cases stand in different relations to the city and one may be entitled to the relief and the other not, but the main foundation relied upon, in both cases, is that the Rooney contract stands in the way of the proposed contract, and by making the contract under contemplation, the city would be providing by the second contract for work already provided for by contract; so that it becomes necessary in this action to examine again the Rooney contract, and interpret it as best we can.

It is undoubtedly true, that the power conferred upon a municipal corporation, to make this improvement, is contained in Sec. 1692, Rev. Stat., paragraph 19. That is the power generally given to the city, as found in that section, and that reads, among other powers conferred upon the municipality: "To construct, open, enlarge, excavate, improve, deepen, straighten, or extend any canal, ship-canal, or water-course located in whole or in part within the corporation."

The power thus conferred is to be exercised and carried out, in the manner provided for in other sections of the statute, certainly, to some extent.

Section 2702, Rev. Stat., provides: "No contract, agreement or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution or order for the appropriation or expenditure of money, be passed by the council or by any board or officer of a municipal corporation, unless the auditor of the corporation, and if there is no auditor, the clerk thereof, shall first certify that the money required for the contract, agreement or other obligation, or to pay the appropriation or expenditure, is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose."

That statute, we suppose, was intended to prevent the incurring of an obligation on the part of a municipality without the means at hand, to meet the obligation thus incurred.

As the statute stood, with the authority to do the work, as I have stated, under the one section, and the limitation as to the power to contract, as I have read in another, the improvement could not go forward, without the money being on hand with which to meet the obligation incurred by the contract.

In that situation, on March 18, 1889, the legislature of the state passed this act, found in 86 O. L. 109, Sec. 2668-1, Rev. Stat.: "The council of any city of the first class, second grade, is hereby authorized and empowered to cause proposals to be advertised for, for dredging any navigable stream within the limits of such city, for a period not exceeding five years, and are authorized to enter into a contract for such dredging for one or more years, not exceeding five; provided, that the amount expended each year for dredging shall not exceed the current revenue for such purposes in each year."

Without this statute, it must be conceded, that the contract sought to be enforced here by Mr. Rooney, or relied upon in this case, by the plaintiff, could not legally have been made. Now how far did this stat-

ute remove the limitation existing under Sec. 2702, Rev. Stat. ? It does not apply to all municipalities. It applied only to cities of the first class, second grade. What is the subject matter dealt with? Authorize and empower or cause proceedings to be had for dredging. It is only as to contracts for dredging, after the limitation of Sec. 2702, Rev. Stat., is removed. Every other contract, that this municipality as well as all others can make, involving the expenditure of money, can only be made when the provisions of Sec. 2702, Rev. Stat., have been complied with. '

It is not every improvement of the river, clearly, that would fall within the terms of this statute. I mean that contracts for the improvement of a river would not be authorized in the present state of the legislation, without complying with the terms of Sec. 2702, Rev. Stat. The limitation as to dredging contracts was taken away,—removed. But, in the judgment of the court, the other limitation was carried into that statute, that the expenditures of any one year should not exceed, in the language of the statute, the current revenues for such purpose in each year.

It was not intended, in the judgment of the court, by this statute, to authorize the city to enter into a contract for the improvement of the river, which might require the expenditure of a large sum of money to be raised only by incurring a debt of the city. And it was not intended to open up to the municipality the right to incur an obligation that should require the expenditure of money to be borrowed. In that we cannot agree with counsel, that the term here, "the current revenues of the year," involves money raised under the terms of another statute, by the issuance of bonds, and incurring a debt on the part of the city.

If these specifications had been made of this proposed work, prior to the Rooney contract, and by express terms included in the Rooney contract, as the legislation then stood, it would be absolutely without validity, because not authorized by the statutes. But it is said, by counsel, that although that may be so, that when subsequent legislation came, the contract being in existence, by subsequent legislation the city was authorized to borrow, and put into this fund a large amount of money, that fund and contract became operative. That we cannot approve. It is not in accordance with our judgment. We think, interpreting this contract, in view of the legislation that then existed, the known source from which the current revenues from year to year were provided, that no such improvements as the one now in contemplation could have been contemplated in that contract.

It is very clear that the widening of the river, could not, as the legislation then stood, or by virtue of any that has since been enacted, provide for the widening of this river, beyond its then banks. So that we are perfectly clear, that as to a large percentage of the proposed contract, it is certain it cannot and does not fall within the terms of the Rooney contract. If there was any such attempt on the part of the city it would be without validity.

The same limitation applies to what is termed in the contract "special dredging." Special dredging was to be done as required by the city. Now it is very clear that the city had no power to require "special dredging," involving the expenditure of money beyond the current revenues of the year.

In that view of the statute, interpreting the contract in view of the statute, it seems to us very clear, that a large percentage, at least, of

the contract proposed to be made by the city, does not fall within the Rooney contract, and can by no possible interpretation fall within it.

Now whether any portion of that contract proposed to be made, impinges upon the contract which Rooney holds with the city, is quite unnecessary, as we said in the other case.

It is difficult for the city, in providing for the present improvement, to draw an exact line that would fall between the Rooney contract and the one proposed to be made, perhaps; and whether the contract proposed at all impinges upon the rights of Rooney, as I have said, is somewhat doubtful; but if it does at all, it is only to a small percentage. The larger percentage of the proposed contract falls outside, entirely, of anything within the Rooney contract.

Now, in this uncertainty, which is the most that can be claimed, as this is the line to be drawn between the two, we are not disposed to enjoin the city from proceeding with the contract in their own way.

We do not think that a case has been made, in which the solicitor of the city, the law department of the city, or a taxpayer acting for the city, after notice, is entitled to an injunction, to prevent the making of the proposed contract, and the order in the case will be that the petition be dismissed, and the injunction dissolved, at the costs of the plaintiff.